**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JERRY M. BURNETT, II,<br><br>**Plaintiff,**<br><br>**v.**<br><br>FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,<br><br>**Defendant.** | **Civil No.** 24-cv-404 (FAB) |

**OPINION AND ORDER**

BESOSA, Senior District Judge.[1]

Before the Court is the Report and Recommendation ("R&R") by Magistrate Judge D. Edward Snow recommending that the Commissioner of Social Security's decision, which found that claimant Jerry Burnett, II was not "disabled" within the meaning of the Social Security Act, 42 U.S.C. § 423(d), be affirmed, and claimant Burnett's objections to the R&R. (Docket No. 17; Docket No. 18.) For the reasons set forth below, the Court **ADOPTS** the reasoning in the R&R. The Commissioner's decision is **AFFIRMED**.

## I. Background

On September 26, 2022, Mr. Burnett protectively applied for supplemental security income benefits pursuant to Title XVI of the Social Security Act. (Docket No. 10 at pp. 183-188) (hereinafter

[1] Of the District of Puerto Rico, sitting by designation.

"R."). He alleged that he has been disabled and unable to work since April 20, 2022 due to high blood pressure, heart disease, heart spasms, lung disease, and shortness of breath. (R. 183, 209.) The SSA denied Mr. Burnett's claim, and again denied his claim upon reconsideration. (R. 101-05; R. 107-10.) Mr. Burnett requested further review, and Administrative Law Judge ("ALJ") Mary M. Renfoe held a hearing and ultimately concluded that Mr. Burnett was not disabled. (R. 14-33.) The Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision. (R. 76.) This action for judicial review followed.

**A. The ALJ's Decision**

In reaching her decision that claimant Burnett is not disabled, the ALJ followed the five-step analysis required by 20 C.F.R. § 404.1520. At step one, she found that Mr. Burnett had not engaged in substantial, gainful activity since he filed his application for benefits. (R. 19.) At step two, she found that Mr. Burnett suffered from the following severe impairments: hypertension, vasospastic angina, gouty arthritis, neuropathy, mild obstructive lung disease, and obesity. Id. In her step two analysis, the ALJ also considered Mr. Burnett's vision issues, including the fact that at a consultative examination his visual acuity was 20/70 in both eyes, uncorrected. Id. The ALJ also

considered Mr. Burnett's testimony that he needed glasses but could not afford them. Id. The ALJ noted that Mr. Burnett had a history of gastroesophageal reflux disease ("GERD"). Id. The ALJ concluded that neither claimant's visions issues nor his GERD constituted severe impairments that would be expected to interfere with claimant's ability to perform work-like activities. Id.

At step three, the ALJ determined that none of Mr. Burnett's impairments, alone or in combination, met the severity of any of the listed impairments in Appendix 1 of the Social Security disability regulations. (R. 20; 20 C.F.R. Part 404, Subpart P, Appendix 1.) Because Mr. Burnett's impairments did not meet the severity of a listed impairment, the ALJ proceeded to step four in which she determined Mr. Burnett's residual functional capacity ("RFC"), which is the maximum functional capacity of a claimant to engage in work, given his or her impairments. See 20 C.F.R. § 404.1545. The ALJ determined that Mr. Burnett had an RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the following limitations:

> he can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and balance as that term is defined in the DOT and SCO. He can never climb ladders, ropes, or scaffolds or work around hazards such as moving mechanical parts and high, exposed places. He can tolerate occasional exposure to pulmonary irritants such as concentrations of dusts, fumes, and gases and cannot perform work involving exposure to extreme hot temperatures (defined as over 90 degrees Fahrenheit),

> extreme cold temperatures (under 30 degrees Fahrenheit), or excessive humidity (over 80 percent).
>
> (R. 20.)

Based on this RFC and Mr. Burnett's lack of past relevant work history, the ALJ found that other work existed in the national economy in significant numbers that plaintiff could perform. (R. 28.) Specifically, the ALJ found that claimant could perform the work of an inspector/hand packager (DOT Code 559.687-074), a marker (DOT Code 209.587-034), and an electrical assembler (DOT Code 729.687-010). Id. The ALJ's findings were based on the testimony of a vocational expert ("VE") who testified at the hearing. Id.

**B. The Report and Recommendation**

Pursuant to 42 U.S.C. § 405(g), Mr. Burnett brought this action for judicial review of the ALJ's decision, arguing that the ALJ's analysis was flawed in several respects. (Docket No. 12.) First, Mr. Burnett argued that the ALJ failed to account for his vision issues in determining his RFC. Id. at p. 10. As a result, claimant argued, the ALJ's hypothetical question to the VE during the hearing did not incorporate Mr. Burnett's visual impairment, which would have impacted the types of jobs he could perform. Id. at pp. 10-11. Second, Mr. Burnett argued that the ALJ failed to consider his kidney issues in his RFC. Id. at pp. 8-9. Third,

Mr. Burnett argued that that the ALJ failed to consider Mr. Burnett's obesity in his RFC and its effect on his other impairments. Id. at pp. 12-15. Finally, Mr. Burnett argued that the ALJ failed to properly weigh the medical source opinion of his nurse practitioner, Kerri Ellis, which the ALJ had found to be unpersuasive. Id. at p. 4-8.

In the R&R, the magistrate judge recommended that the ALJ's decision be affirmed in its entirety. (Docket No. 17.) He found that the ALJ had adequately considered and explained Mr. Burnett's visual issues, kidney issues, and obesity, and had also properly weighed Ms. Ellis's medical opinion. Id. In of Mr. Burnett's objections to the R&R, he largely restates the arguments presented in his opening brief in contending that each of the magistrate judge's conclusions as to adequacy of the ALJ's reasoning were erroneous. See Docket No. 18.

**II. Standard of Review**

A district court may refer a pending motion to a magistrate judge for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). Any party adversely affected by the R&R may file objections to it, and the district court is obligated to review *de novo* those portions of the R&R to which the party has lodged an objection. Lowery Wilkinson Lowery, LLC v. State, No. 25-CV-22-RAW, 2025 WL 3776701 at *1 (E.D. Okla.

Dec. 31, 2025) (citing United States v. Raddatz, 447 U.S. 667, 673 (1980)). In conducting its review, the district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

On judicial review of a final decision by the Commissioner of Social Security, after reviewing the pleadings and transcript of the record, a district court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security." 20 U.S.C. § 405(g). In conducting its review, a court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013). Instead, a district court must determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." Allman v. Colvin, 813 F.3d 1326, 1330 (10th Cir. 2016). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). "It requires more than a scintilla, but less than a preponderance." Id. (citing Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)). In considering whether the correct legal standards were applied, a court determines "whether the ALJ followed the specific rules of law

that must be followed in weighing particular types of evidence in disability cases." Id. (quotations and citation omitted).

**III. Discussion**

In determining a claimant's RFC, the ALJ "must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." Wells v. Colvin, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis in original); see also 20 C.F.R. § 416.945(a)(2). In reaching a determination, "the ALJ's 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence.'" Wells, 727 F.3d at 1065 (citing Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).

**A. Visual Issues**

Mr. Burnett argues that the ALJ failed to account for his visual impairment in formulating his RFC. (Docket No. 18 at pp. 1-3.) He notes that at step two the ALJ discussed the fact that claimant's vision was 20/70 in both eyes and that he testified that he needed glasses but could not afford them. Id. at p. 1. Mr. Burnett argues, however, that the ALJ failed to properly account for these visual limitations in formulating Mr. Burnett's RFC in step four. He points out that the ALJ noted in her analysis that that claimant's visual limitations were non-severe,

suggesting that the ALJ relied upon her earlier finding of non-severity in declining to incorporate his visual limitations into the RFC. See R. 26.

The ALJ's opinion, however, demonstrates that she did take into account claimant's visual limitations in formulating the RFC, and did not merely rely upon her step two finding of non-severity. The ALJ discussed Mr. Burnett's consultative examination that measured his visual acuity at 20/70. (R. 23.) The ALJ also discussed Mr. Burnett's testimony that he needed glasses, but could not afford them, that he has a difficult time seeing street signs, and that he had difficulty reading the paperwork for the hearing. (R. 22.) The ALJ explained that Mr. Burnett's visual limitations bore on his other testimony that his medications sometimes make him feel dizzy. (R. 26.) ("This was also considered in light of his reported vision difficulties, as he indicated he needed glasses . . . ."). Because of these factors, the ALJ explained, Mr. Burnett's RFC included the limitation that he cannot be exposed to hazards. (R. 26.) The ALJ also indicated that the medical record did not indicate that claimant's visual impairment was severe, which the ALJ explained in her step two analysis meant that it would not be expected to interfere with claimant's ability to perform work-like activities. (R. 19, 26.) Based on this conclusion, it is reasonable that the ALJ did not

include further visual limitations in claimant's RFC beyond the prohibition against exposure to hazards. Id. Though claimant may disagree with the ALJ's conclusions, where those conclusions are supported by substantial evidence, as is the case here, the Court will not "substitute our judgment for that of the agency." Jimison ex rel. Sims v. Colvin, 513 F. App'x 789, 792 (10th Cir. 2013). Furthermore, the ALJ's hypothetical to the VE contained the limitation on exposure to hazards, and so it did take into account all of Mr. Burnett's impairments, severe and non-severe. R. 55; Sandoval v. Barnhart, 209 F. App'x 820, 825 (10th Cir. 2006) ("Hypothetical questions to a vocational expert need only include those limitations that the ALJ finds are established by substantial evidence.").

**B. Kidney Issues**

Next, Mr. Burnett argues that the ALJ failed to take into account his kidney issues in formulating his RFC. (Docket No. 18 at p. 3.) Mr. Burnett points to his testimony that the pain in his lower right back makes him feel as if something is going to blow up, that his kidney issues cause him to use the restroom about two times per hour, and that his kidney pain makes it so that he can only sit for five to ten minutes before he needs to change positions. Id. at pp. 3-4. Mr. Burnett contends that the ALJ failed to account for these limitations in his RFC.

A claimant's testimony of symptoms, including pain, is evaluated by considering "(1) whether the claimant established a pain producing impairment by objective medical evidence; (2) whether there is a nexus between an established objective impairment and the claimant's subjective complaints of pain; and (3) whether upon consideration of all of the evidence, the claimant's pain is disabling." Freeman v. Chater, 100 F.3d 967 (Table) (10th Cir. 1996); see 20 C.F.R. § 404.1529. Here, the ALJ first considered the objective medical evidence and found that Mr. Burnett's impairments could reasonably be expected to cause his alleged symptoms. (R. 22.) The ALJ concluded, however, that Mr. Burnett's testimony concerning his pain was not entirely consistent with the objective medical evidence. Id.

In reaching this conclusion, the ALJ discussed Mr. Burnett's testimony regarding his pain and his need to frequently use the restroom. (R. 21, 25.) The ALJ also noted that Mr. Burnett's kidney medication dosage was increased to 100mg in response to a gout flare up. (R. 21.) The ALJ also observed that the objective medical evidence did not mention any issues with urinary frequency, and that one medical exam was negative for genitourinary symptoms. Id. (citing R. 480, Ex. B6F.) During the hearing, Mr. Burnett's counsel also questioned the VE on whether certain jobs could be performed if the employee needed options to

both sit and stand. (R. 58-59.) The VE testified that it would depend on the employer and the individual, but that in certain scenarios the jobs identified by the VE could be performed.[2] Id. In her opinion, the ALJ stated that she "considered [the kidney] condition in [the RFC]," but did not include limitations based on urinary frequency due to lack of objective medical support in the record. (R. 21.) The ALJ's opinion thus demonstrates that she correctly assessed claimant's kidney condition by considering his testimony along with the objective medical evidence.

**C. Obesity**

Mr. Burnett next argues that the ALJ failed to consider his obesity in determining his RFC. "Obesity must be considered throughout the sequential evaluation process," and "obesity in combination with other impairments may or may not increase the severity or functional limitations of the other impairment[s]." Owings v. Kijakazi, No. CIV-20-1295-SM, 2021 WL 6197421 at *4 (W.D. Okla. Dec. 30, 2021) (quoting SSR 19-2p, 2019 WL 2374244 (May 20, 2019)). "[A]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made],"

[2] The VE testified "I mean some of these jobs can be performed at the sit-stand option but in my opinion, if they are having to change positions every 10-15 minutes that some are they going to impact the production [sic]. If they can keep up with the production that's required on the job then I would say they could be performed." (R. 58-59.)

and "the ALJ need not speculate as to the impact of [a claimant's] obesity." Id. (alterations in original).

Here, the ALJ found at step two that claimant's obesity constituted a severe impairment. (R. 19.) At step four, the ALJ discussed the medical examinations that noted Mr. Burnett's obesity. (R. 24, 27.) The ALJ also noted Mr. Burnett's BMI measurements found throughout the record. (R. 22, 23, 24, 27.) The ALJ then stated that she considered Mr. Burnett's obesity when she included in the RFC that claimant can tolerate only occasional exposure to pulmonary irritants and cannot perform work in extreme temperatures or humidity. (R. 26.)

While Mr. Burnett argues that the ALJ failed to consider how obesity impacts his other impairments, he fails to identify any medical evidence tending to show that these impairments were exacerbated by his obesity. Owings, 2021 WL 6197421 at *4 (quoting Colvin, 513 F. App'x at 798) ("Plaintiff points to no evidence in the medical record reflecting 'functional limitations from [his] obesity or of any impairments possibly caused or exacerbated by [his] obesity that are inconsistent with the RFC.'"). Mr. Burnett also argues that he "reported headaches and fatigue consistently, which *could* be related to hypertension combined with obesity . . . ." (Docket No. 18 at p. 7.) (emphasis added). The ALJ, and this court, however, cannot speculate as to the impacts of

plaintiff's obesity on his functional capacity. In the absence of objective medical evidence in the record that relates Mr. Burnett's obesity to the severity of his other impairments, the ALJ's consideration of Mr. Burnett's obesity contained no reversible error.

**D. Kerri Ellis's medical opinion**

Lastly, Mr. Burnett argues that the ALJ failed to properly weigh nurse practitioner Kerri Ellis's medical opinion. (Docket No. 18 at pp. 4-6.) Mr. Burnett contends that, contrary to the ALJ's findings, Ms. Ellis's medical opinion is supported by "her observation and treatment" of Mr. Burnett. Id. at p. 5. Mr. Burnett also argues that in finding Ms. Ellis's opinion inconsistent with treatment records and other medical opinions in the record, the ALJ failed to specify which parts of those records Ms. Ellis's opinion was inconsistent with. Id.

An ALJ must consider and weigh each of the medical opinions in the record. See 20 C.F.R. § 404.1520c. In weighing the medical opinions, an ALJ must consider five factors: (1) supportability, (2) consistency, (3) the source's relationship with the claimant, (4) the source's specialization, and (5) other factors. Id. The most important of these factors are supportability and consistency, and an ALJ must always address these factors in an analysis of a medical opinion, though they

need not always address the remaining factors. Id. For claims filed after March 27, 2017, an ALJ may not defer to or give any controlling weight to any medical opinion, including opinions from a claimant's treating sources. Id.

Here, the ALJ's decision to give little weight to Ms. Ellis's opinion because it lacked supportability and consistency with the record was not erroneous. In her medical opinion, Ms. Ellis filled out a standardized form containing questions related to a person's ability to do work-related activities. (R. 503-06.) In her opinion, Ms. Ellis indicated that Mr. Burnett would not be able to sit, stand, or walk for more than ten to thirty minutes at a time, or in total over the course of an eight-hour-work day. (R. 503.) She also opined about Mr. Burnett's ability to lift and carry, use his hands and feet, and engage in movements such as bending, squatting, crawling, climbing, and reaching. (R. 503-04.) Ms. Ellis also opined on Mr. Burnett's ability to stay on task and to complete tasks in a timely manner. (R. 504.) Ms. Ellis indicated that the basis of her opinion was "pain" but did not identify any other objective medical evidence on which her opinion was based. Id.; R. 506.

The ALJ found that Ms. Ellis's opinion lacked support because the sole basis she provided for her opinion was "pain." (R. 27.) While Mr. Burnett argues that Ms. Ellis also stated that

her opinion was based on her "observation and treatment" of Mr. Burnett, this language appears only in the standardized language of one of the form's questions. Additionally, Ms. Ellis was primarily involved in treating claimant's hypertension and related cardiovascular impairments, and her treatment records contain little discussion of the musculoskeletal and cognitive capabilities she attests to in her opinion. In light of these circumstances, the ALJ's conclusion that Ms. Ellis's opinion lacked supportability was not erroneous.

Nor did the ALJ err in concluding that Ms. Ellis's opinion lacked consistency with the rest of the record. Exhibits B1F, B4F, B5F, B6F, and B8F, which the ALJ noted in her discussion of the consistency of Ms. Ellis's opinion, primarily relate to claimant's cardiovascular issues. The ALJ also compared Ms. Ellis's opinion with that of consultative examiner Dr. Krishnamurthi as well as the state agency medical consultants. (R. 27.) Though the ALJ did not specifically recite which aspects of the treatment records and medical opinions she found inconsistent with Ms. Ellis's opinion, she previously recounted these records in detail. Endriss v. Astrue, 506 F. App'x 772, 777 (10th Cir. 2012) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting

[the medical source's] opinion."). The ALJ thus followed the appropriate steps in analyzing Ms. Ellis's opinion, and her decision to afford it little weight based on its lack of support and inconsistency with the record was based on substantial evidence.

**IV. Conclusion**

For the foregoing reasons, the R&R is **ADOPTED** in full and the decision of the Commissioner of Social Security is **AFFIRMED.**

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 25, 2026.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE